Our third case for argument this morning is United States v. Johnson. Mr. Gonzalez. Thank you, Your Honors, and may I please the Court. Good morning. My name is Gilberto Gonzalez. I represent Lionel Johnson, the defendant appellant in this case. There are three reasons why the case should be reversed, Your Honors. Number one, the government committed prosecutorial misconduct by improperly using the proffered statements during the trial. Number two, the late proffered disclosure amounted to a violation to Johnson's right to testify. And number three, Johnson was denied his right for a speedy trial. So now to my argument, Your Honors. The first constitutional violation came when the government used Johnson's proffered statements as direct evidence of possession. Can I ask you a question about that? Yes. Did the use of the proffered statement violate the proffer agreement? Yes, Your Honor. How so? I put aside the district court's ruling on what would be admitted during the trial and what wouldn't be admitted in trial. And tell me, did it violate the proffer agreement? Yes. Just to give a little background, Your Honor. There was an agreement between the state of Wisconsin and Johnson in which Johnson agreed to give a proffered interview. None of those incriminatory statements would be used against him. Unless? Unless he testified. Or unless he took a position that was inconsistent with what he said during the proffer. Which one? Well, the court's ruling was that if Johnson testified or— I understand because courts sometimes limit the language of a proffer and say, look, we're not going to let it in, I'm not going to let it in unless the defendant testifies, particularly in a pro se trial. But I want to know, did the language of the proffer agreement say it would not be admissible unless Johnson testifies or did the proffer agreement say it wouldn't be admissible unless Johnson takes a position inconsistent with what he said during the proffer agreement? Because those are two very different things. Yes, Your Honor. I understand, but the appellate record that we were given, I don't think there is the specific answers. All that we work with was on the trial transcripts in which the federal government agreed to be bound to that agreement. It agreed to not introduce any statements whatsoever during the federal trial. But did that happen? No, Your Honors. The government broke their agreement many, many times. For example, the first instance, the government, during the case in chief, elicited testimony from one of the officers who conducted the proffer interview with Johnson. And this officer stated in open court and in front of the jury that Johnson admitted during a Miranda interview that Johnson admitted possessing the methamphetamines found inside the apartment. Now, Your Honors, there are two issues with that testimony. Number one, Johnson did in fact have a Miranda interview. However, during that interview, Johnson never stated nor admitted having possession of the drugs. And the second issue where Johnson admitted possession was during the proffer interview, Your Honors, and as you remember, the deal was that the government was not supposed to make any reference whatsoever to that. And in fact, as we read the record, the government admitted that they made a error. They considered and they promised to fix it on redirect, but that did not happen, Your Honors. Because as soon as redirect was started, the government asked again the same officer about that statement that he just made, and the officer once again stated, testified that Johnson indeed admitted possession, but in another interview, aka the proffer interview. And, Your Honors, that is not fixing the error. It is clear that the issue with that statement is its substance, the incriminatory nature, not so much. Did Mr. Johnson ask for a better fix? Well, Your Honor, Johnson objected. As soon as the redirect was over, Johnson asked the court, wait, did that officer testify about my proffer statement? And which the court said no. That was about the Miranda interview. And the fair reading of the record shows that the court misunderstood the issue as well. The issue was not- Right, but where my question is going is it's pretty easy for me to imagine that a capable defense lawyer would have responded much more strongly and accurately and would have gotten a much better fix of this problem. But Mr. Johnson chose to represent himself at trial. And my question is, in essence, whether the imperfections in the way this was handled aren't, in essence, a foreseeable consequence of that choice. Well, Your Honor, perhaps Johnson could have watered the objection more clearly. However, we need to remember, as you pointed out, that was pro se, and even though pro se are supposed to add as competent attorneys, trial courts on many times leave more leeway. They might do so. They are not required to do so when someone chooses to forego his constitutional right to counsel. Well, Your Honor, the fact remains that Johnson made that inquiry to the court about whether the officer testified pertinent to the proffer agreement. So from that question itself, the court should have put a notice, oh, wait, maybe there was not something to comment. But the judges disregarded the Johnson objection. What the court should have done is give a jurisdiction to forget everything that the officer said pertinent to the possession admission. But they didn't do that, Your Honors. Could I ask you, there's an interesting theory here, in essence, where you're arguing that the failure to provide earlier than it was provided, the recording of the proffer statement violated Johnson's right to put on a defense and to testify in his own defense. I'll leave aside the interesting textual question of where the right to testify in your own defense comes from. Scholars have had an interesting time with that. But it's now well entrenched in constitutional law. But I was thinking, for example, of the use of a prior conviction under 609, right, where before trial, let's suppose the trial judge makes a mistake and says, I'm going to allow impeachment using this 25-year-old conviction. As I understand the law, that is not reviewable on appeal unless the defendant actually takes the stand and the improper impeachment actually happens at trial. Is that right? Yes. Why is a similar kind of waiver rule not appropriate here on the assumption that the district court was wrong in saying it would allow impeachment? Well, on that question, Your Honor, I guess that takes me to my second argument, which you pointed out. It is our position that by the government's own volition to disclose the profiled audio during the trial, Johnson effectively was denied his right to testify. And we're going by what the record said, what Johnson stated to the court, that he wanted to listen to profiled audio so that he could prepare testimony accordingly. Now, the profiled audio, Your Honor, is about two hours long. So it will take days for it to fully prepare a defense. But the record shows that the government deliberately chose to disclose the profiled audio late. I understand you say that that was an error. Yes, that was an error. But why was such an error not waived by his failure to take the stand as we would handle a district judge's error regarding a 609 impeachment? Well, the record states that Johnson needed to testify and perhaps avoid impeaching himself. So if he didn't listen to it, he couldn't. It would be a risky decision to go on the stand and testify. I understand the point. But, well, OK, I've asked my question. Thank you. Sorry, Your Honor, if I didn't ask your question. But on that point, Your Honor, had Johnson been given a fair chance to listen to the profiled audio, he would testify. And this is important, Your Honor, because he was, as the Supreme Court has said, that the defendant in many cases is the most important witness in a criminal defense. And Johnson will most likely testify about his innocence. And this will directly counter the government's case. On many sidebars, Your Honors, Johnson stated that one of his main defenses was that the methamphetamine found inside his apartment was not his. So just on that, Your Honors, we believe that from that denial of his right to testify, his defense was highly prejudiced. And if I can just go back to my first argument about all these improper disclosures, Your Honors. So I mentioned that the government released a testimony from the officer. However, when I was reading the trial transcript earlier yesterday, I noted that the government made at least three times during their closing arguments, they made reference to the fact that Johnson admitted possession, Your Honors. And this is important. That's the closing arguments, the very last thing the jury gets to hear from the government. And even the government, on their briefs, they admit that the improper disclosure arguably implicates a Fifth Amendment violation. And that is our position here, Your Honors, that rather than a mere evidentiary admission error, this is a constitutional violation, highly prejudicial to Johnson's defense, which requires a reversal. And now to conclude, Your Honors, my third point, and that was that Johnson was denying his right for a speedy trial. As you might know, the right for a speedy trial is one of the most basic constitutional rights in our Constitution. When it comes to the constitutional right, not the statutory right, this Court should consider all the facts and circumstances and apply the four factors in Parker v. Wingo. And in this case, Your Honors, I would like to focus on the first factor, which is the length of the delay, which I believe is the most contingent. And it is our position that the length of Johnson's trial was unconstitutionally long. The record shows that Johnson was first arrested on April 3, 2020. However, his trial began, his federal trial began until late April 2021. So that means that Johnson was waiting for his trial for more than one year. And, Your Honors, that is a long time to wait for one's trial. Adding to it, this Court has specifically held that delays approaching one year are presumptively prejudicial. So that means that— Do you want to address the state versus federal issue on that? Yes, Your Honors. So on that, I'll first remind your attention that this is based—our argument is based on the constitutional right, not the statutory right. And when it comes to the constitutional right, the Supreme Court has stated that the spirit trial clock begins to tick when the defendant is incarcerated. And you might be right. Johnson was in state prison on April 3rd. However, as we look at the charges that the federal court charged Johnson are pretty much the same that the state charges that he was facing. In fact, the record shows that the federal government began investigating Johnson as soon as September 2020. And then on November, the federal prosecutions agreed to take the case. So, Your Honors, effectively, Johnson, while he was in state prison, effectively he was in federal incarceration because he was facing the same charges for the same evidence that the state collected. And for that reason, it is our position that the spirit trial clock began to tick when he was in state custody. If Your Honors don't have any more questions, I would like to remain— One more quick question. I haven't seen you identify any substantive difference between the written summary of the proffer session that was provided and the total content. Was there any material difference? I understand the level of detail. Well, no. Pretty much the summary highlighted the main things that happened on the proffer. Thank you. You're welcome. Thank you, Mr. Gonzalez. Mr. Koenig. Good morning, and may it please the Court. My name is Jonathan Koenig. I appear on behalf of the United States this morning. The Court should affirm Johnson's convictions because the trial judge in the first instance correctly ruled on the spirit trial issue and because he exercised his discretion reasonably in addressing the government's late disclosure of the audio recording. The statement in Investigator Pizzala's testimony about only one bag of meth being Johnson's is not grounds for reversal because at the end of the day, this reference to a statement made during the proffer session was either harmless or it did not affect the outcome of the trial for purposes of plain error review. I guess I'd like to tackle these issues in the reverse order from my opponent and begin with the speedy trial issue, if that's acceptable to the Court. The judge's separate sovereign's rationale is entirely consistent with this Court's precedence in Clark and Richardson. The speedy trial act, therefore, did not begin to run against the federal government when Johnson was arrested by the state. It began to run when the United States formally accused him of crimes by way of indictment in January of 2021. And indeed, the case moved along pretty briskly after that point. Johnson cites out-of-circuit precedent for the idea that when there is evidence of collusion between the federal government and the state, it may be appropriate to hold the federal government to an earlier speedy trial act date. This Court alluded to something similar in Richardson when it said that had the state been the fed's cat's paw, charging the defendant solely in order to detain him pending an eventual federal indictment, the state prosecution would have been a de facto federal prosecution and the speedy trial clock would have started to run then. There's no evidence in this case of any sort of collusion or even sort of prima facie facts that would warrant digging further to find out if there was collusion. My office wasn't aware of Johnson's case until the fall of 2020. And so there certainly isn't evidence that the federal government made the state its cat's paw here. In fact, in Richardson, the federal government was at least aware of the state proceeding at the outset because it lodged a detainer. And as Judge Hamilton will recall, because I think he wrote a separate opinion in that case, the whole debate in Richardson was whether a complaint was sufficient to initiate the federal prosecution or not. Anyway, even if you count the entire period from arrest until federal indictment, excuse me, federal trial, Johnson has failed to establish a violation as we argue in our brief. In fact, the only Barker v. Wingo factor that clearly tips in his favor is that he was talking about a speedy trial act rights, speedy trial rights early and often. But it isn't clear when we turn to the relative fault of the parties. It isn't clear that the state was responsible for the delay in state court. It would appear rather that COVID was responsible for much of the delay as well as a change in counsel for Johnson. So and certainly he hasn't shown prejudice from the delay in the concrete sense of losing evidence or witnesses or having memories fade in a way that could be prejudicial. Turning to the audio recording, I'd like to first try to dispel the notion that the government's late disclosure was deliberate or tactical. It was not. Proffer sessions in Brown County are not typically recorded and there was nothing in the written report of the session, Trial Exhibit 22, to indicate that it had been recorded. The existence of the recording came to light during trial prep and prosecutors promptly located the recording, brought a copy to the jail where Johnson was housed and thereafter checked in, this was about five days before trial, checked in to see if Johnson was able to access his discovery. They were told that he could. That's in the trial transcript on page 74. So Johnson for the first time on the first day of trial says I can't, I haven't been able to access the recording. The judge very carefully listens to these concerns and asks if Johnson would like an adjournment. Johnson shoots that idea down pretty quick. And so the judge went from there and what he settled upon was that he would make arrangements for the defendant to listen to the recording overnight at the jail and he reasoned that there wouldn't be any prejudice. Incidentally, this was a conditional ruling as I think your question was alluding to, Judge Hamilton. The conditional ruling was this would be admissible for impeachment purposes provided that the defendant was able to listen to the recording overnight at the jail. It certainly influenced the judge that the defendant had been provided a written summary of this interview twice in discovery and tellingly at the very end of my opponent's argument he conceded that there isn't any difference between its substance, there isn't any difference between the written summary and the recording which leads me to ask why are we here. But anyway, the recording itself is not in the record. I should probably clarify that as well. But the judge's conditional ruling was not an abuse of discretion. It was eminently reasonable. This is what we're going to work out. You were there at the interview. You presumably remember a lot of what you said. This isn't going to be a big deal as long as you have a chance to listen to the recording overnight. You can make a well-informed decision about whether you want to testify in your defense. Where things get murky with Johnson's argument is that he doesn't explain how the audio recording affected that decision making or could have affected that decision making because he doesn't really say anything about the audio recording. He can't because he didn't make it part of the record below and it's not part of the record on appeal. And so lastly I'd like to turn to the issue of Investigator Pitala's apparently inadvertent reference to part of the proffer interview in which Johnson says only one of the bags found in the attic space was his. The impression that he left on direct was that that was made during a custodial post-arrest interview. In fact it was made during the proffer. Johnson didn't object at the time. He didn't object later when the government attempted to clean up this problem. He argues in his reply brief that because the government did flag the problem for the court he was excused from objecting for purposes of forfeiture and plain error analysis. He doesn't cite any support for that proposition. Instead he simply argues that the court should apply harmless error review. But even if it does, the outcome should be the same because the evidence of guilt on count one was so strong. To recap, law enforcement found eight ounces of meth in six bags in a crawl space above the defendant's second story living area, next to or underneath the rifle. Earlier the same day, according to Breanne Doddsworth, Johnson told her he had just scored what? Methamphetamine. How much? Eight ounces. And offered to sell her some. That call had been preceded by Facebook Messenger exchanges about purchasing meth or fire. Johnson described himself as the biggest middleman in town. And I have to clarify something in my brief. He did not describe himself as the Meth King, but he did acknowledge that others had given him that moniker, that he was known in town as the Meth King. In short, the jury had ample reason to convict him on count one, and plenty of reasons to reject his alternative version that someone named Nick must have placed the meth in that crawl space above Johnson's living area unbeknownst to Johnson, even though it was probably worth thousands of dollars. Now, Johnson argues that the statement about only one bag being his was not harmless because the jury may have convicted him of possession with intent to distribute solely on the basis of one bag. Superficially, that argument has some appeal, but one bag, in this case, would have contained about 38 grams of meth. That's the 230-gram total divided by six roughly equal bagfuls. DEA agent Wincher testified at pages 271 to 272 that they were roughly equal bagfuls, which would make them around 38 grams of meth. Elsewhere, he said, the bags appear to be anywhere between a quarter ounce and upwards of an ounce. An ounce is 28 grams. Now, why am I talking about numbers? First of all, the government never mentioned the only one bag comment during its closing rebuttal. We didn't argue that the jury should convict on the basis of one bag. But also, the jury's response to the special verdict question demonstrates that they regarded this as an all-or-nothing proposition. The case was tried that way. He either possessed all of it or he didn't. And they found, in response to the special verdict question, that he possessed 50 grams or more of meth. So the special verdict is inconsistent with the theory that the jury could have convicted him based solely on one bag. And I would encourage you, again, to look at pages 271 and 272 of the trial transcript for some of those numbers. I'm happy to answer any questions you have in the time that remains. Otherwise, I'm content to rest on our leave. Thank you very much. Thank you. Anything further, Mr. Gonzalez? Yes, Your Honor. Very briefly, two points. The first one on the spirit trial. The government talks about Richardson. However, I would like to tell you, Your Honor, that Richardson is completely distinguishable from this case because the state charges for the defendant in Richardson were battery. Whereas the federal charges were possession. So two different charges. So that's why the court in the dictum stated the cutbacks. And that would be totally different in the defendant which has been charged as a de facto for the federal prosecution. This is what happened to Johnson. Essentially, the same charges. So on that, following the rationale and the dictum from Richardson, this court should conclude that the spirit trial clock began to tick when Johnson was in state custody. And my second point, Your Honors, the government states that all these improper disclosure were harmless because the evidence was so strong. Well, on that, I have to disagree, Your Honors. The government talked about Breanne. She was an unreliable witness. She was the ex of Johnson. She was an addict while she was cooperating with the federal government. So how accurate could her recollections be when she was addicted to meth at that time? The government talked about Facebook messages, but the Facebook account was named only Cheryl. That's not Johnson. It could not be Johnson. And as law, the government talks about that Johnson admitted only to one back. However, that admission only already tainted the jury. And from that, a bunch of inference follows. Thank you, counsel. And on that, Your Honors, I'd like to conclude. Thank you so much. Mr. Gonzalez, the court appreciates your willingness and that of your law firm to accept the appointment in this case. And your assistance to the court as well as your client. Thank you. The case is taken under advisement.